**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Jennifer S. Wagner,** OSB No. 024470
Email: jwagner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840

**Charles E. Schaffer** (*pro hac vice* forthcoming)
Email: cschaffer@lfsblaw.com
**Daniel C. Levin** (*pro hac vice* forthcoming)
Email: dlevin@lfsblaw.com
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone:  (215) 592-1500
Facsimile:   (215) 592-4663

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| THE CITY OF NEW CASTLE, on behalf of itself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>       Defendant. | Case No.: 3:18-cv-00489<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff, The City of New Castle ("New Castle" or "Plaintiff"), brings this action on

behalf of itself and other similarly situated townships, cities, municipalities and other counties

throughout the nation and in the Commonwealth of Pennsylvania against Defendant Intel

{SSBLS Main Documents/8986/004/00703706-1 }
Page 1 - **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

Corporation ("Intel" or "Defendant") and alleges the following, which are based upon the investigation of counsel, Plaintiff's personal knowledge, and information and belief:

## SUMMARY OF THE ACTION

1.      Intel is one of the top-selling semiconductor companies in the world and manufacturers semiconductor chips of central processors ("CPUs") that are sold as individual components or sold as components in computers including personal computers ("PCs) and mobile devices ("Devices"). Some of the companies that have sold computers or mobile devices with Intel CPUs are Apple, Asus, Acer, Google, Lenovo, Hewlett Packard, and Dell.

2.      The CPU(s) is the hardware component responsible for interpreting and executing most of the commands from a computer's other hardware and software, i.e., the brain of a computer, laptop, or mobile device.

3.      Intel represented and touted to consumers in its advertising, marketing and on the packaging of the products it sells that it manufactures some of the fastest CPUs in the world.  In addition to the speed of the processing, Intel represented and touted to consumers the security features of its CPUs.

4.      Two of the most essential features in a CPU which consumers and users are looking for are speed and security, and Intel's success is largely based on the advertised speed and security of its CPUs.

5.      Focusing on speed and producing the fastest CPUs Intel took short cuts which left the CPUs with security flaws, vulnerabilities and susceptibilities to cyber-attack. Specifically, Intel's CPUs suffer from an inherent security defect referred to as "Meltdown" and/or "Spectre" in the computer industry. The inherent defect in Intel's CPUs creates the aforementioned security flaw or vulnerability which allows hackers the ability to access personal, sensitive, private and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

secure information in every computer, PC or Device that uses an Intel CPU which were designed with features and components to perform "speculative execution".

6.    Intel started decades ago designing and manufacturing most of its CPUs to perform a process known as "speculative execution" in order to increase speed and performance by allowing a CPU to predict its next set of instructions ("Defect").  While "speculative execution" may in fact increase the speed of a CPU, it was known within the industry and by Intel that "speculative execution" creates security vulnerabilities – referred to as "Meltdown" and "Spectre" – that can be exploited by hackers to steal personal, secure and sensitive information and data.

7.    The only way to fix the security flaw or vulnerability is to "patch" these vulnerabilities which requires changes to the root levels of the operating systems which in turn will dramatically slowdown or decrease the performance of the CPU processing by up to 30% or more. As such, in order to fix or correct the security flaw or vulnerability in Intel CPUs, companies that design operating systems are scrambling to develop patches for installation into the operating system, however, since the Defect is a design defect existing in the hardware and architecture of each affected CPU, a software patch will do nothing more than mitigate the threat.

8.    Because security is a critical feature of a computer, PC or Device, the Defect renders the Intel CPUs unfit for their intended use and purpose for which such goods are intended, sold and used for in that the CPUs suffer from an inherent security defect which requires a software patch that degrades the speed and performance of the CPU. Moreover, only a full redesign of Intel's CPUs can remedy the Defect and eliminate the "Meltdown" and "Spectre" vulnerabilities in their entirety.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

9.      Computers, PCs and Devices that do not have Intel processors or CPUs are not affected by the "Meltdown" or "Spectre". As such, Intel's representations that it's processors and CPUs are some of the fastest on the market are false, because to solve or fix the security flaw a patch must be installed in the operating system which will slow the processing and speed down 30 percent or more.  So, in reality, Intel's processors and CPUs are far slower than its competitors once the security flaw is patched.

10.      Plaintiff and the other members of the Class are now forced to either purchase a new Defect-free CPU, PC or Device, or continue to use a defective CPU with serious security vulnerabilities and/or significantly reduced performance.

11.      Plaintiff  like many other cities, municipalities, counties and townships across the nation and in Commonwealth of Pennsylvania have suffered ascertainable injuries and loss of money or property as a result of Intel's wrongdoing because they would not have purchased Intel's CPUs, PCs or Devices containing Intel CPUs, or would not have paid the price they paid, but for Intel's failure to disclose the existence of the Defect. To date, Intel has failed to remedy these harms, and continues to earn substantial profit from selling CPUs with the inherent Defect.

## **PARTIES**

12.      Plaintiff, New Castle is a city and is the County Seat in Lawrence County, Pennsylvania.  It is home to approximately 20,000 residents.

13.      New Castle provides a wide range of public, health and social services on behalf of their residents. In order to provide these services New Castle utilizes city employees in 15 different departments. During the period of 2013-2018 , New Castle purchased 118 computers with defective Intel CPUs.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

14.    Defendant Intel Corporation is a business incorporated under the laws of the State of Delaware.  Intel's headquarters is located at 2200 Mission College Boulevard, Santa Clara, California.  At all relevant times, Intel was engaged in designing, manufacturing, distributing, and selling electronic computer components, including the defectively designed CPUs at issue.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction under 28 U.S.C. §1332(d)(2)(A) as modified by the Class Action Fairness Act of 2005 because at least one member of the Class is a citizen of a different state than Intel, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million exclusive of interest and costs.

16.    Venue is proper under 28 U.S.C. §1391 because many of the acts and transactions underlying this action occurred in this District and because: (a) a substantial part of the events or omissions giving rise to this claim occurred in this District; (b) Intel is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its defective CPUs; (c) Intel conducts substantial business in this District; and (d) Intel is subject to personal jurisdiction in this District.  Indeed, on January 29, 2018, Intel filed a Response to Plaintiffs' Motion to Transfer in *In re Intel Corp. CPU Mktg. & Sales Practices Litig.*, MDL No. 2828, ECF No. 40 (J.P.M.L. Jan. 29, 2018), where Intel stated, "Intel has extensive operations in Oregon, and the team that evaluated the security vulnerabilities and developed patches to mitigate them is principally based in Portland."  Clearly, Intel has substantial operations in Oregon and key witnesses and documents are likely to be located in this District.

17.    Plaintiffs also allege that venue would also be proper in the Northern District of California because a substantial part of the events or omissions which gave rise to Plaintiff's

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

claims occurred within that District and Intel's principal place of business is located in Santa Clara, California.

## FACTUAL ALLEGATIONS

18.     The CPU is the core component of a computer, PC or Device and handles all basic system instructions, such as processing, mouse and keyboard input and running the applications. The CPU serves as the brain of a computer, PC or Device.

19.     One of the most critical tasks that a CPU must perform is allowing a computer's or Device's operating system to interact with the computer's or Device's hardware.  In order to do this the CPU must dedicate some of its processing power to this task. This dedicated memory is known as" kernel memory".

20.     A computer can operate or run in one or two modes: the "user" mode, and the "kernel" mode.  The user mode is when the user of the computer, PC or Device, is inputting commands and the kernel mode is when the computer, PC or Device, is carrying out the task that the user inputted.  During the kernel model the CPU is using the dedicated memory known as "kernel memory".

21.     Kernel memory is used for tasks such as writing to a file or opening a network connection.  When a software program needs to execute an action, it temporarily hands control of the CPU to the kernel memory to carry out the task.

22.     To make the transition from user mode to kernel mode and back to user mode as fast and efficiently as possible, the kernel is always present, although it is invisible to these programs.

23.     When the kernel is needed, the program makes a system call, the processor switches to kernel mode and uses the kernel memory to complete the task the user wants. When the task is complete, the CPU leaves the kernel memory and allows the computer, PC or Device, to accept commands from the user and software again—to wit, user mode.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

24.    While in user mode, the kernel's code and data remains out of sight but present in the background.

25.    To develop faster and faster CPUs, Intel took shortcuts and its CPUs ran what is called "speculative execution" which was intended to increase the speed and performance by allowing a CPU to guess what operation or process is going to be run next so that code can be standing by and ready to execute. However, Intel's speculative execute code may "fetch" secure codes without first performing a security check which would block such a request. So, this allows low-privilege processes to access memory in the computer's kernel when it should not be allowed to and exposes the information and data which should be privileged and secure from hackers.

26.    The Defect has resulted in a flaw that has come to be known as "Meltdown" or "Spectre" and it was discovered by Jann Horn, a security analyst at Google-run security research group called Google Project Zero in June 2017,[1] but was not made public until on or about January 2, 2018.

27.    The impact from the Defect is that it allows hackers and the malicious software they develop the ability to spy on computer processes and, correspondingly, any information maintained on the computer's or server's physical memory. This includes but is not limited to: passwords, usernames, encryption keys, photos, emails, instant message, and sensitive personal

---

[1] Cade Metz and Nicole Perlroth, Researchers Discover Two Major Flaws in the World's Computers, The New York Times (Jan. 3, 2018), available at https://www.nytimes.com/2018/01/03/business/computer-flaws.html.  See also Project Zero, Reading privileged memory with a side-channel (Jan. 3, 2018), https://googleprojectzero.blogspot.com/2018/01/reading-privileged-memory-with-side.html; Lipp, et al., "Meltdown", https://meltdownattack.com/meltdown.pdf.

{SSBLS Main Documents/8986/004/00703706-1 }
Page 7 - **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

and business information and data.  It has been reported and demonstrated by online resources that the "Meltdown" security flaw could allow hackers to steal passwords *in real time*.[2]

28.     To safeguard a computer from the "Meltdown" security flaw, the operating system[3] must be updated or "patched" with software code.  The patch will result in computers with Intel CPUs ignoring the kernel memory inside of Intel microprocessors. This process is known as Kernel Page Table Isolation or "KPTI."  KPTI will result in a dramatic slowdown of computing performance—estimated by some to be up to 30 percent.[4]

29.     Leaving a computer vulnerable to hackers is not an option and could result in anything from the installation of malware to identity theft.  Consumers are left with no choice but to accept the patch to fix the "Meltdown" security flaw that Intel knew about for over a year (and should have known about for much longer) or not use their computer at all.

30.     But rather than inform consumers about the major security flaw when researchers reportedly informed Intel of the "Meltdown" and "Spectre" vulnerabilities in June or July of 2017,  Intel hid it from the public and continued to sell CPUs at a price much higher than consumers would have paid for them had they known about the flaw.  Intel even went so far as to earn a profit it sold the CPUs to consumers touting the processors' fast speeds, while the very shortcuts that Intel took to develop its processors necessitated a patch that would slow down processor speeds.

---

[2] Michael Schwarz Twitter Status, "Using #Meltdown to steal passwords in real time #intelbug #kaiser #kpti" (Jan. 3, 2018), https://twitter.com/misc0110/status/948706387491786752.

[3] Operating systems is the software program that runs the computer and all the programs for a user. The major operating systems are: Microsoft's Windows, Apple's Mac OS, Canonical Ltd.'s Ubuntu (a Linux based system)

[4] Rob Thubron, Massive security flaw found in Intel CPUs, patch could hit performance by up to 30%, Techspot (Jan. 3, 2018), available at https://www.techspot.com/news/72550-massive-security-flawfound-almost-all-intel-cpus.html.

{SSBLS Main Documents/8986/004/00703706-1 }
Page 8 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

31.     Rather than informing consumers about the major security flaw, Intel's Chief Executive Officer Brian Krzanich decided to take his money and run and sold millions of dollars of Intel stock—all that he could part with under the corporate bylaws—after he learned of the "Meltdown" security flaw.  As a result of the stock sale, Krzanich received more than $39 million before the security flaw became public.[5]

32.     Intel publicly acknowledged the Defect on January 3, 2018 and issued a press release concerning the Defect.[6] Despite acknowledging the Defect, Intel refused to take responsibility by claiming other competitors' products suffer from the Defect and downplaying the impact from the software patch on performance and speed. *Id.*

33.     The Defect is material and Intel knew or should have known about it long ago but either hid it from consumers and the public and/or was negligent in failing to discover it.

34.     Intel's' CPUs are not fit for their intended and particular use for which they were sold.

35.     Plaintiff and the other members of the Class are now forced to either purchase a new Defect-free CPU, PC or Device, or continue to use a defective CPU with serious security vulnerabilities and/or significantly reduced performance.

36.      Plaintiff and other members of the Class have suffered ascertainable injuries and loss of money and property as a result of Intel's wrongful and actionable conduct and/or omissions because had Plaintiff and other members of the Class known of the "Meltdown" and/or "Spectre" security flaw, or of the patch needed to guard their vulnerable and sensitive data, they would not have bought the Intel CPUs, or would have paid substantially less for them. In addition to being  overcharged for and paying for the defective CPUs at issue, class  members

---

[5] Sean Gallagher, Intel CEO sold all the stock he could after Intel learned of security bug, ArsTechnica (Jan. 4, 2018), available at https://arstechnica.com/information-technology/2018/01/intel-ceos-sale-ofstock-just-before-security-bug-reveal-raises-questions.
[6] https://newsroom.intel.com/news/intel-responds-to-security-research-findings/.

{SSBLS Main Documents/8986/004/00703706-1 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

also will have to incur additional costs and expenses to purchase an additional working CPU without the Defect. Such losses were the result of the above acts of unfair competition and Intel's misconduct.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this class action claim pursuant to Federal Rule of Civil Procedure 23 on its own behalf, as well as the following Class:

> All political subdivisions, municipalities, cities, townships and counties in the United States who purchased one or more Intel CPUs either from Intel, its authorized retail sellers, or from a computer retailer or manufacturer who installed an Intel CPU inside the customer's computer, PC or mobile device.

38.    Plaintiff also brings the action on behalf of a state Subclass for Class members in the Commonwealth of Pennsylvania.

39.    Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or the result of discovery.

40.    This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

41.    The Nationwide and State Subclass are collectively referred to hereafter as the "Class." Excluded from the Class are: (a) any Judge presiding over this action and members of their immediate families; (b) Intel and their officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Intel had a controlling interest and (c) all persons who properly execute and file a timely request for exclusion from the Class.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

42.    **Numerosity**: The Class is comprised of purchasers and owners of Defective Intel CPUs  as described above and who are geographically dispersed throughout the United States, making joinder of all Class members impractical. The precise number and identities of Class members is unknown to Plaintiff but is known to Intel and/or its agents.  Upon information and belief, the number of proposed members of the Class exceeds thousands. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased Intel's CPU or a computer, PC or Device with an Intel CPU.  The precise number and entity of Class members can be ascertained through discovery, using records of sales, warranty records and other information maintained by Intel and their agents. As such, notice can be provided to the Class by first class mail, electronic mail, publication, social media and/or other customary methods of notice that satisfy Rule 23 and due process.

43.    **Commonality**: There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members.  Among the questions common to the Class are:

a    whether Intel's CPUs are defectively designed;

b    whether computers, PCs or Devices containing Intel's CPUs are vulnerable to security flaws, including "Spectre" and/or "Meltdown";

c    whether Intel had a duty to discover the Defect

d    whether Intel had a duty to notify the manufactures of the computers, PCs and Devices of the Defect;

e    whether Intel had a duty to notify purchasers of the CPUs and/or computers, PCs  and  Devices containing the CPUs of the Defect;

f    whether Intel made any express warranties in connection with the sale of its defective CPUs;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

g whether Intel breached any express warranties in connection with the sale of its defective CPUs;

h whether Intel made any implied warranties in connection with the sale of its defective CPUs;

i whether Intel breached any implied warranties in connection with the sale of its defective CPUs;

j whether Intel's acts and practices would deceive a reasonable consumer;

k whether Intel violated applicable consumer protection laws by selling defective CPUs with a "Meltdown" or "Spectre" security flaw or by failing to disclose the security flaws, and failing to provide relief required by the law;

l whether Intel was unjustly enriched by selling defective CPUs

m whether Plaintiff and the other Class members have sustained monetary loss and the proper measure of that loss.

n whether Plaintiff and the other Class members are entitled to declaratory and injunctive relief; and

o the appropriate nature, scope and measure of relief to provide to the Class.

44. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Intel's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective CPUs. All of Plaintiffs' claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Intel's uniform course of conduct described herein.  Plaintiff and all Class members have the same claims against Intel relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Intel's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

members. The defenses, if any, raised by Intel against Plaintiff's claims will likely be similar if not the same to the defenses that will be asserted, if any against Class members' claims.

45.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class members and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product design defects, and state consumer fraud statutes, and who will vigorously prosecute this action.

46.    **Predominance**: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members

47.    **Superiority and Manageability**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, if not impossible, because a large number of Class members are located throughout the United States. In addition, the damages suffered by individual class members are relatively small in comparison to the burden and expenses which would be required in prosecuting an individual action against Intel. As a result, few if any individual class members could afford to bring an individual action against Intel. Should individual Class Members be required to bring separate actions, the cost to the court system would be enormous and courts would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. This would in all likelihood result in significant delays and expenses to all parties and multiple courts hearing virtually identical lawsuits. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication,

{SSBLS Main Documents/8986/004/00703706-1 }
Page 13 **-  CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

economies of scale, comprehensive supervision by a single court and protects the rights of each

Class member and maximises recovery to them.

## CAUSES OF ACTION

### First Claim For Relief

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class and Pennsylvania Subclass pursuant to 13 Pa.**
**Cons. Stat. Ann. § 2314 )**

48.     Plaintiff repeats and realleges the allegations above as if full set forth herein.

49.     Intel is a "merchant" as defined under the Uniform Commercial Code ("UCC")

and 13 Pa. Cons. Stat. Ann. § 2314.

50.     The CPUs are "goods" as defined under the UCC and 13 Pa. Cons. Stat. Ann.

§ 2314.

51.     Intel and its authorized agents and resellers sold Intel CPUs to Plaintiff and Class

members in the regular course of business.

52.     Intel impliedly warranted that the CPUs were of a merchantable quality and fit for

a particular purpose which was implied in the contract of sale to Plaintiff and other members of

the Class.

53.     Intel impliedly warranted to members of the general public, including Plaintiff

and Class members, these CPUs were of merchantable quality (i.e., a product of a high enough

quality to make it fit for sale, usable for the purpose it is made, of average worth in the

marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same

quality as those generally acceptable in the trade or that would pass without objection in the

trade, were free from material defects and were reasonably fit for the ordinary purposes  for

which they were intended or used. In addition, Intel either was or should have been aware of the

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

particular purposes for which such CPUs are used, and that Plaintiff and the Class members were relying on the skill and judgment of Intel to furnish suitable goods for such purpose.

54.    Pursuant to agreements between Intel and its authorized agents and re-sellers, the stores Plaintiff and Class members purchased their defective Intel CPUs from are authorized retailers and authorized CPU service facilities. Plaintiff and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

55.    Intel breached the implied warranty of merchantability because the CPUs were not of a merchantable quality due to the Defect resulting in the "Meltdown" or "Spectre" security flaw and vulnerability and other conduct alleged above.

56.    The Defect in Intel's CPUs were inherent in each of the CPUs and were present when the CPUs left Intel and their authorized agents' and retailers' possession and control.

57.    Plaintiff and Class members' interactions with Intel and its authorized agents and retailers suffices to create privity of contract between Plaintiff and Class members, on the one hand, and Intel, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third party beneficiaries of contracts (including implied warranties) between Intel and the retailers who sell the CPUs or computers or other Devices containing the CPUs. Intel's warranties were designed for the benefit of consumers who purchase(d) the CPUs or computers, PCs or Devices, with CPUs already in them.

58.    Any attempt by Intel to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers are unconscionable and unenforceable. Specifically, any warranty limitations are unenforceable because Intel knowingly sold a defective product without informing consumers about the Defect and the security flaws and vulnerabilities.

{SSBLS Main Documents/8986/004/00703706-1 }
Page 15 - **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

59.    Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Intel's conduct described herein.

60.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages, equitable relief and any other relief to be determined at trial.

## Second Claim For Relief

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,
15 U.S.C. §§ 2301, et seq. ("MMWA")
(On Behalf of the Nationwide Class and Pennsylvania Subclass)**

61.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

62.    Plaintiff and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

63.    The CPUs are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

64.    Intel is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

65.    Under MMWA, an "implied warranty" is one that "arises under State law…in connection with the sale by a supplier of a consumer product. 15 U.S.C. § 2301.

66.    This claim is being brought under Section 2310(d)(a) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction which provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

67.     The CPUs' implied warranties are accounted for under Section 2301(7) of the MMWA, and are warranties which Intel cannot disclaim, when they fail to provide merchantable goods.

68.     As set forth herein, Intel breached their warranties with Plaintiff and Class members by selling Plaintiff and other members of the Class defective Intel CPUs which were neither merchantable nor fit for their particular and ordinary purpose for which CPUs are used and thereby violated the MMWA.

69.     Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor. *Id.*

70.     The CPUs share a common defect in that they all have the inherent Defect which results in the "Meltdown" or "Spectre" security flaw or vulnerability which will require a software patch which will severely decrease the performance and speed of the CPU if installed or require a class member to purchase a new CPU or computer, PC or Device, without a defective CPU.

71.     Despite demands by Plaintiff and the Class for Intel to pay the expenses associated with diagnosing and repairing the CPUs which were and will be borne by consumers, Intel has refused to do so.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

72.     As a direct and proximate result of Intel's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class members have suffered damages in an amount to be proven at trial.

73.     The amount in controversy for each Plaintiff's and Class members' individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

74.     Plaintiff and Class members are entitled to recover damages as a result of Intel's breach of warranties.

75.     Plaintiff and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## Third Claim For Relief

### BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class and the Pennsylvania Class)

76.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

77.     Intel designed, manufactured, advertised, distributed and sold defective CPUs.

78.     Intel is a "merchant" and the Intel CPUs are "goods" within the meaning of the Uniform Commercial Code and Pennsylvania law..

79.     In conjunction with each sale, Intel represented, promised, assured  and warranted that its CPUs provided a particular level of security, which they did not, and were capable of achieving particular speeds, which, after implementation of a software patch necessary to mitigate security threats caused by a design defect, they are not.

80.     Intel's representations, assurances, affirmations, and promises relating to the CPUs security and levels of speed and performance, all of which were made by them in their

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

marketing, advertising and product labeling and packaging became part of the basis of the bargain and created an express warranty that the CPUs would conform to Intel's representations, assurances, affirmations and promises.

81.     Intel made the above representations, assurances, affirmations, and promises to induce Plaintiff and members of the Class to purchase the defective CPUs, and Plaintiff and members of the Class relied on them when purchasing the Defective CPUs and/or computers, PCs or other Devices containing the CPUs.

82.     Intel's express warranties run to Plaintiff and the other members of the Class either directly or as third-party beneficiaries.

83.     All conditions precedent for stating a warranty claim have been satisfied by Plaintiff and other Class members.

84.     Intel breached its express warranties by delivering and selling CPUs that failed to conform to Intel's affirmations, representations, assurances, affirmations and promises.

85.     Any attempt by Intel to disclaim or limit the express warranty *vis-à-vis* consumers are unconscionable and unenforceable. Specifically, any warranty limitations are unenforceable because Intel knowingly sold a defective product without informing consumers about the Defect and the security flaws and vulnerabilities.

86.     Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Intel's conduct described herein.

87.     Intel's breach of express warranties directly and proximately caused damages, injury in fact, and ascertainable loss to Plaintiff and the other members of the Class, in an amount to be determined at trial.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**Fourth Claim For Relief**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *et seq*.) ("UCL")**
**(On Behalf of the National Class)[7]**

88.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

89.     Intel's actions and representations alleged herein emanated from Intel's headquarters in the State of California.  Intel's business acts and practices including its deception of Plaintiff and the Class were centered in, carried out and perfected within the State of California thereby injuring the Plaintiff and the Class. Therefore, the application of the UCL to the entire Class is appropriate.

90.     The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

91.     Intel's conduct, as described herein, was and is in violation of the UCL. Intel's conduct violates the UCL in at least the following ways: (a) knowingly and intentionally concealing from Plaintiff and the members of Class the existence of the Defect; (b) marketing the CPUs as being functional and not possessing a defect that would render them not fit for their intended and ordinary use; and (c) violating other California laws, including California laws governing false advertising and consumer protection.

92.     Intel's misrepresentations and omissions alleged herein caused Plaintiff and the members of the Class to purchase their defective CPUs and/or computers, PCs or other Devices with defective CPUs. Absent these misrepresentations and omissions, Plaintiff and the members

---

[7] In the alternative, Plaintiff, individually and on behalf of the Statewide Classes, brings a cause of action pursuant to the consumer protection laws of the class members' respective states.

{SSBLS Main Documents/8986/004/00703706-1 }
Page 20 - **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

of the Class would not have purchased their CPUs, computers, PCs or other Devices at the prices they paid (or purchased them at all).

93.    Intel had a duty to disclose these issues because it had exclusive knowledge of the Defect, security flaw and other material facts not known to Plaintiff and the other members of the Class. Moreover, Intel actively concealed the Defect, security flaw and other material facts from Plaintiff and other members of the Class.

94.    As a result of Intel's misrepresentations and omissions, Plaintiff and the members of the Class have suffered injury in fact, including lost money or property.

95.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Intel under CAL. BUS. & PROF. CODE § 17200.

96.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Intel from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiffs and the members of the Class any money they acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided for under CAL. BUS. & PROF. CODE §§ 17203 & 3345; and for such other relief set forth below.

### Fifth Claim For Relief

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(CAL. BUS. & PROF. CODE § 1750, *et seq.*) ("CLRA")**
**(On Behalf of the National Class)[8]**

97.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

98.    Intel's actions and representations alleged herein emanated from Intel's headquarters in the State of California.  Intel's business acts and practices including its deception

---

[8] In the alternative, Plaintiff, individually and on behalf of the Statewide Classes, brings a cause of action pursuant to the consumer protection laws of the class members' respective states.

{SSBLS Main Documents/8986/004/00703706-1 }

Page 21 - **CLASS ACTION ALLEGATION COMPLAINT**

of Plaintiff and the Class were centered in, carried out and perfected within the State of

California thereby injuring the Plaintiff and the Class. Therefore, the application of the UCL to

the entire Class is appropriate.

99.     The CLRA proscribes "unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or which results in the

sale of goods or services to any consumer."

100.     The CPUs are "goods" as defined in CAL. BUS. & PROF. CODE § 1761(a).

Plaintiff and the members of the Class are "consumers" as defined in CAL. BUS. & PROF.

CODE § 1761(d), and Plaintiff, the members of Class, and Intel are "persons" as defined in

CAL. BUS. & PROF. CODE § 1761(c).

101.     As alleged above, Intel made numerous false representations concerning the

benefits, performance, and capabilities of the CPUs that were misleading. In purchasing the

CPUs or computers, PCs or Devices containing the CPUs, Plaintiff and the other the members of

the Class were deceived by Intel's failure to disclose that CPUs had an inherent Defect and

security flaw resulting in the CPUs failure to perform in accordance with their represented and

expected features, characteristics, uses,  and benefits, and that a software patch would have to be

installed which would result in further decrease in the performance and speed of the CPUs.

102.     Intel's conduct, as described herein, was and is in violation of the CLRA. Intel's

conduct violates at least the following enumerated CLRA provisions: (a) § 1770(a)(2):

misrepresenting the approval or certification of goods; (b) § 1770(a)(5): representing that goods

have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

(c) § 1770(a)(7): representing that goods are of a particular standard, quality, or grade, if they are

of another; (d) § 1770(a)(9): advertising goods with intent not to sell them as advertised; and (e) §

{SSBLS Main Documents/8986/004/00703706-1 }
**Page 22 -  CLASS ACTION ALLEGATION COMPLAINT**

1770(a)(16): representing that goods have been supplied in accordance with a previous representation when they have not.

103.    Plaintiff and the members of the Class have suffered injury in fact and actual damages resulting from Intel's material omissions and misrepresentations because, inter alia, they lost money when they purchased their CPUs or computers, PCs or other Devices containing CPUs, and/or paid an inflated purchase price for the CPUs or computers, PCs or other Devices containing CPUs, and/or later expended sums of monies to replace the Defective CPUs, computers, PCs or other Devices containing CPUs.

104.    Intel had a duty to disclose these issues because it had exclusive knowledge of the Defect, security flaw and other material facts not known to Plaintiff and the other members of the Class. Moreover, Intel actively concealed the Defect, security flaw and other material facts from Plaintiff and other members of the Class.

105.    The facts concealed and omitted by Intel to Plaintiff and the members of the Class — that the CPUS are defective , have a security flaw which exposes data and sensitive personal information to hackers, and that a software patch will have to be installed to the operating system in an attempt to fix the security flaw, which in turn will result in the further decreased performance and speed of the CPU — are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the CPUs or pay a lower price. Had Plaintiff and the members of the Class known about the defective nature of the CPUs, PCs or Devices, they would not have purchased their CPUs, computers, PCs or Devices, or would not have paid the prices they paid.

106.    This cause of action solely seeks injunctive relief at this time. However, Plaintiff intends to send a demand letter to Intel via certified mail pursuant to the requirements of the

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

CLRA in order to provide the notice required by CAL. CIV. CODE § 1782(a).  The CLRA letter

will advise Intel that they are in violation of the CLRA and must correct, replace or otherwise

rectify the goods alleged to be in violation of CAL. CIV. CODE § 1770. Intel will be further

advised that in the event the relief requested has not been provided within thirty (30) days,

Plaintiff will amend the complaint to include a request for monetary damages pursuant to the

CLRA. If Intel does not correct, replace, or otherwise rectify the goods and issues alleged in

Plaintiff's CLRA notice or this complaint within the statutorily proscribed 30-day period, Plaintiff

intends to amend this complaint to seek both injunctive relief and monetary damages against Intel

pursuant to the CLRA, CAL. CIV. CODE §§ 1781 and 1782.

107.    Plaintiff further seeks an order awarding costs of court and attorneys' fees pursuant

to CAL. CIV. CODE § 1780(e).

## Sixth Claim For Relief

**VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER
PROTECTION LAW
("UTPCPL" 73 PS §201, et seq.)
(On Behalf of the Pennsylvania Class)**

108.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

109.    Intel, Plaintiff, and the Pennsylvania Class are "Person[s]" within the meaning of

Pennsylvania Unfair Practices and Consumer Protection Law ("UTPCPL" 73 PS §201, et seq.**).**

110.    The Pennsylvania UTPCPL declares unlawful "unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce …."

111.    Intel engaged in, and continue to engage in, the above-referenced deceptive acts

and practices in the conduct of business, trade, and commerce by manufacturing, distributing,

marketing, and selling defective CPUs to class members while misrepresenting and concealing

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

material facts about the CPUs including representing and touting that its CPUs were the fastest on the market.

112.    The acts, omissions and practices of Intel as alleged herein constituted and continue to constitute, unlawful and unfair business acts and practices within the meaning of Section 201 et seq. of the Pennsylvania Unfair Trade Practices and Consumer Protection law. Plaintiff has standing to bring this action under Unfair Trade Practices and Consumer Protection Law § 201 because it has suffered an injury-in-fact and lost money because of Intels' conduct.

113.    In the course of its business, Intel has engaged in "unfair" business acts or practices  because Intel failed to disclose and concealed material facts concerning the CPU's inherent Defect and the fact that as a result of the inherent Defect the CPU was incapable of the security, performance and speed as represented and as such was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Intel's conduct. Intel also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the CPUs.

114.    Intel has also engaged in "unfair" business acts or practices in that the harm caused by it's design, manufacture, supply, distribution, marketing, sale  and or control of its product outweighs the utility of such conduct, and the conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, caused substantial injury to Plaintiff and similar consumers and provides Defendant with an unfair competitive advantage over those companies that abide by the law.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

115.    Intel's actions described herein constitute fraud within the meaning of Pennsylvania Unfair Trade Practices and Consumer Protection Law § 201 et seq, in that it  has failed to disclose that their products contain the defects which it new or should have known .about. Intel's failure to disclose these defects was likely to mislead Plaintiff and similar consumers into believing that the products were free from defects and would provide the claims of superior performance, speed and security when used. Plaintiff relied on Intel's claims and representations regarding the superior performance, speed  and  security of it's CPUs.

116.    Intel'' violations present a continuing risk to Plaintiff and the Pennsylvania State Class, as well as to the general public. Intel's unlawful acts and practices complained of herein affect the public interest.

117.    Intel's acts and practices, as described herein, have deceived Plaintiff and the Proposed Pennsylvania State Class members and are highly likely to deceive a substantial portion of the consuming public.

118.    As a direct and proximate result of Intel's business practices, Plaintiff and the Pennsylvania State Class members suffered injury-in-fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for. Plaintiff and the proposed Pennsylvania State Class members are entitled to injunctive relief and attorneys' fees and costs.

119.    Pursuant to Pennsylvania Unfair Trade Practices and Consumer Protection Law § 201-4.1, Plaintiff seeks an order of this Court requiring Intel to disgorge all ill-gotten gains and awarding Plaintiff and Class members full restitution of all monies wrongfully acquired by it  by means of such "unlawful" and "unfair" conduct, so as to restore any and all monies to Plaintiff

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

and Class members which were acquired and obtained by means of such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Intel.

## Seventh Claim For Relief

### Unjust Enrichment or Quasi-Contract
### (On Behalf of Nationwide Class and Pennsylvania Subclass)

120.    Plaintiff hereby incorporates the above allegations by reference as if fully set forth herein.  Plaintiff asserts this claim individually and on behalf of the proposed Class, and in the alternative to any contract- or warranty-based causes of action pursuant to Federal Rule of Civil Procedure 8(d)(2).

121.    As Plaintiff and the Class show just grounds for recovering money paid for benefits Intel received from them, either directly or indirectly, and they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law based on principles of restitution and unjust enrichment, or though quasi-contract.

122.    Intel, having received such benefits, is required to make restitution. The circumstances here are such that, as between the two, it is unjust for Intel to retain such benefit based on the conduct described above.  Such money or property belongs to the Plaintiff and Class members and can be traced to funds or property in Intel's possession.

123.    Plaintiff and Class members have unjustly enriched Intel through payments and the resulting profits enjoyed by Intel as a direct result of such payments. Plaintiffs' detriment and Intel's enrichment were related to and flowed from the conduct challenged in this complaint.

124.    By virtue of the purchase and sale of the CPUs in question, Intel alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being had and received by Intel, either directly or indirectly, at the expense of Plaintiff and Class members.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Plaintiffs and other Class members conferred a benefit upon Intel by purchasing one of the defective CPUs. Intel had knowledge of the general receipt of such benefits, which Intel received, accepted and retained. Intel owes Plaintiff and Class members these sums that can be obtained either directly from Class members, Intel or its authorized retailers.

125.    Intel should not be permitted to retain the benefits conferred by Plaintiff and Class members via payments for the defective CPUs.  Other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an order certifying the proposed Class and appointing Plaintiff and their counsel to represent the classes;

B.    For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

C.    For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

D.    For an order or orders requiring Intel to adequately disclose and remediate the Defect and "Meltdown" or "Spectre" security flaws;

E.    For an order awarding Plaintiff and the Class pre-judgment and post-judgment interest;

F.    For an order awarding Plaintiff and the Class Members treble damages, other enhanced damages and attorneys' fees as provided for under the consumer statutes cited above and related statutes;

G.    For an order awarding Plaintiff and the Class Members reasonable attorneys' fees and costs of suit, including expert witness fees;

H.    For an order awarding such other and further relief as this Court may deem just and proper.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED this 21st day of March, 2018.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/Steve D. Larson
    **Steve D. Larson,** OSB No. 863540
    **Jennifer S. Wagner,** OSB No. 024470

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email:     slarson@stollberne.com
            jwagner@stollberne.com

LEVIN SEDRAN & BERMAN, LLP
**Charles E. Schaffer** (*pro hac vice* forthcoming)
**Daniel C. Levin** (*pro hac vice* forthcoming)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email:     cschaffer@lfsblaw.com
            dlevin@lfsblaw.com

**Attorneys for Plaintiff**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840